THOMPSON (LEE v.). See Case No. 8,202.

## Case No. 13,966.

### THOMPSON v. LIVERPOOL & LONDON & GLOBE INS. CO.

[2 Hask. 363.] [2]

Circuit Court, D. Maine.    July, 1879.

INSURANCE—FIRE—PROOF OF LOSS—OBJECTIONS—
WAIVER—OMISSIONS—VOID STIPULATIONS
—INDEMNITY.

1. An insurance company, by making specific objections to a proof of loss, waives all other objections thereto of which it had knowledge.

2. The involuntary omission of an existing mortgage from a proof of loss is immaterial.

3. Incendiary threats made so long prior to the insurance as not to increase the hazard, if concealed, will not avoid the policy.

4. Stipulations in a policy of insurance, not required by, or conforming to, the statutes of Maine, may be disregarded, for they are void.

5. Under a policy, restricting the damages to the cost of replacing the property destroyed less its depreciation from use, &c., the assured should be indemnified for his actual loss; and the value of buildings, and land prior to the fire, less the value of the land, after the fire, will not give such indemnity.

Assumpsit [by Lena Thompson and others] upon a policy of fire insurance to recover damages for the burning of a dwelling and barn. Plea, non-assumpsit with brief statement, setting out a non-compliance by the assured with the conditions of the policy. The cause was heard by the court without a jury. Proof of loss was duly and reasonably made after the fire, and specific objections were made to it by the insurance company.

[1] [Reported by Hon. William Cranch, Chief Judge.]
[2] [Reported by Thomas Hawes Haskell, Esq., and here reprinted by permission.]

Josiah H. Drummond, for plaintiffs.

Henry B. Cleaves and Nathan Cleaves, for defendant.

FOX, District Judge. In the proof of loss as presented in October, the plaintiffs claimed to be sole owners in fee of the premises. It is conceded that the property was subject to a mortgage of $1,000 given by their mother, whose estate they inherited.

The statute of Maine as well as the terms of the policy require that the interest of the assured should be stated in the proof of loss; but it has been repeatedly decided that the insurers may waive the proof of loss, either in whole or in part, and, if they so do, they cannot insist on the objection at the trial.

It appears in the present instance the defendant in July was apprised of the existence of this mortgage by written notice from the holder, and that, in their objection which they made to the proof of loss, nothing was said about the omission of this mortgage; they therefore must be deemed to have waived it, and cannot now rely upon it.

It does not appear that the plaintiffs, the daughters of the mortgagor knew of this mortgage, or that the defendant has in any respect suffered any detriment by its omission from the proof of loss. They had an insurable interest to the full value of the property, and the statement, though erroneous, was in this respect immaterial, and in no way injured the defendant; and the plaintiffs are not to be concluded by this mistake and misstatement. Wood, Fire Ins. 736.

It is claimed that plaintiffs should not recover, by reason of the concealment of threats made to the father of plaintiffs, which were material. It appears that, more than two years before the fire, an anonymous letter was received by their father, J. M. Thompson, informing him that if he did not attend to his own business he might be homeless; that on another occasion, there was some difficulty between him and one Nelson Thompson at a school meeting, about a teacher, in which Nelson told him, perhaps he would not have a home long; that at the time he supposed it had reference to his wife who had separated from him, and that, if there was a divorce, he might have to give up his house.

It does not appear that this difficulty with Nelson Thompson was before the policy was issued; and it is manifest that it was not understood as a threat to burn the buildings, which would never have been made at a public meeting of the school district.

The insurance was not procured at or about the time the letter was found under the door, addressed to the father, but a long time afterwards, and then only at the repeated importunities of the agent of the defendant. In Wood on Fire Insurance (398) it is said, "In order to avoid the policy upon the ground of incendiary threats, the danger

must be real and substantial, and such as materially enhances the risk, and which a person of ordinary prudence would not regard as mere idle talk or report." The facts of the present case do not support this objection, and it cannot prevent a recovery.

The specifications of defence set forth various stipulations found in this policy, with which, it is averred, the plaintiffs did not comply; these, however, are not required by, or in conformity with the statute of this state, which expressly declares, that "all provisions contained in any policy of insurance in conflict with any of the provisions hereof are null and void."

The remaining question is as to the damages, the house being insured for $3,000, and the barn for $400. They were almost entirely consumed, and no serious question is made as to the plaintiff's right to recover the amount thus insured upon the barn. It is claimed there was an overvaluation of the house, which was of brick with a wooden addition, built some ten or twelve years since, at a cost, it is said, of about $4,800 by the father of the plaintiffs; these were farm buildings in Newfield, the farm containing about 115 acres, 35 of which were cultivated. A large number of witnesses estimate the value of the entire property before the buildings were destroyed as $3,000, and the land as worth now from $900 to $1,200.

There is not found in this policy the usual stipulation that the insured, in case of loss, may recover the actual cash value of the buildings; nor is there any express stipulation as to how, or on what basis the loss shall be estimated; but it is provided, "that the cash value of the property destroyed shall in no case exceed the cost to the insured of replacing the same, and, in case of a depreciation from use or otherwise, a suitable deduction from the cash cost of replacing shall be made to ascertain the actual cash value."

Spencer Rogers, an experienced builder in this city, has visited the premises since the fire and ascertained the dimensions and character of the house, and he estimates the cost of replacing the same, using the old material, at $2,573.

The rule of damages as established by the supreme court of Massachusetts in Brinley v. National Ins. Co., 11 Metc. [Mass.] 195, is that the assured is to be indemnified for his actual loss; but, by the terms of the policy, a suitable deduction is to be made from the cost of replacing the building, if buildings destroyed had been diminished in value. In this case, the building being of brick, the diminution in value would be principally confined to the roof and painting and inside finish, all which must to some extent have been defaced or injured during the ten or twelve years since it was completed.

As Rogers never saw the building, I do not think his judgment is entitled to as much weight as it would have been if he had been conversant with them. Nor is the amount at which the estate could have been sold for before the fire, with the deduction of the present value of the land, the sole criterion as to an indemnity to the assured within the terms of the present policy.

Taking into consideration all the circumstances here presented, and that the repairs would have cost two hundred dollars to restore the buildings to their original condition, I find the value of the house at the time of the fire to have been $2,500; and for this sum and the $400 insurance on the barn with interest from Dec. 2, 1878, the plaintiffs are entitled to judgment.